[Cite as *In re J.H.*, 2019-Ohio-696.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106658**

**IN RE: J.H., ET AL.**

**Minor Children**

[Appeal by Mother ]

**JUDGMENT:**
AFFIRMED IN PART;
REVERSED IN PART AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 12920956 and AD 12920957

**BEFORE:** Jones, J., Kilbane, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** February 28, 2019

**ATTORNEY FOR APPELLANT, MOTHER**

Judith M. Kowalski
333 Babbitt Road, Suite 323
Euclid, Ohio 44123


**ATTORNEYS FOR APPELLEES**

**For CCDCFS**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY: Cheryl Rice
Assistant County Prosecutor
3955 Euclid Avenue
Cleveland, Ohio 44115

**ALSO LISTED**

**A.L.H., Mother**

A.L.H., pro se
3672 East 118th Street
Cleveland, Ohio 44105

**C.W., Alleged Father of J.H.**

C.W., pro se
16205 Lakeshore Boulevard
Cleveland, Ohio 44110

**Guardian ad litem for Child**

Maureen T. Nagel
2707 Jaycox Road
Avon, Ohio 44011


**Guardian ad litem for Mother**

Gregory T. Stralka
6509 Brecksville Road

P.O. Box 31776
Independence, Ohio 44131

**A.H., Legal Custodian of K.M.**

A.H., pro se
3672 East 118th Street
Cleveland, Ohio 44105

**S.W., Legal Custodian of J.H.**

S.W., pro se
3719 East 57th Street
Cleveland, Ohio 44105

K.M., pro se
1274 East 133rd Street
Cleveland, Ohio 44112

ON RECONSIDERATION[1]

---

[1]The original announcement of decision, *In re J.H.*, 8th Dist. Cuyahoga No. 106658, 2019-Ohio-9, released January 3, 2019, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

LARRY A. JONES, SR., J.:

{¶1} This appeal arises from decisions rendered by the juvenile court on mother-appellant's ("Mother") motion to modify custody and visitation. For the reasons that follow, we affirm in part, reverse in part and remand.

## I. Procedural History

{¶2} Two children are the subject of this case: K.M., date of birth, March 25, 2003, and J.H., date of birth, August 27, 2012. At all times relevant to the issues presented in this appeal, the children were not living with Mother or their alleged fathers.[2] The children had also been living separate and apart from one another; since 2014, K.M. was in the care and custody of an uncle, and since 2013, J.H. was in the care and custody of an aunt. Although K.M. had previously lived with Mother, J.H. had never lived with her.

{¶3} In May 2015, Mother filed a pro se motion to "modify custody and visitation and set visitation." She requested that the children be placed in her custody or, alternatively, that she be granted additional visitation with them. In an affidavit submitted in support of her petition, Mother averred that K.M.'s custodian was not cooperating in scheduling visitation, and J.H's custodian was not providing proper care for him and often left him in the care of others. Further, Mother averred that both custodians had problems with alcohol use.

{¶4} A guardian ad litem ("GAL") was appointed for the children. Mother requested, and was granted, an in camera hearing for K.M., and that was held on December 2, 2016. On December 22, 2016, Mother requested an attorney; she had a GAL who had been representing her.

---

[2]The alleged fathers are not parties to this appeal, and thus, we limit our discussion of them.

{¶5} In February 2017, Mother's GAL filed a motion to withdraw, stating that she was "no longer on the GAL or assigned counsel list and [was] no longer eligible to serve as appointed counsel or GAL in Juvenile Court." The GAL requested that Mother be appointed a new GAL "as soon as possible."

{¶6} A pretrial hearing was held a few days after the GAL filed her motion. At the hearing, the juvenile court granted the GAL's motion to withdraw. The juvenile court appointed a new GAL for mother, but denied her request for counsel. The new GAL appeared with Mother for two pretrials, but not for the hearing on her custody and visitation motion because he had been "dismissed" by the court at a June 2017 hearing. The hearing on Mother's custody and visitation motion occurred in October 2017.

{¶7} The magistrate issued her decisions in November 2017. The first one, issued on November 16, 2017, related to J.H., the younger child. The magistrate denied Mother's requests to modify custody and for visitation. Specifically, the magistrate decided that it was in the best interest of J.H. if his custodian retained sole legal custody of him, and Mother had no visitation with him. Additionally, the magistrate decided that Mother was not entitled to access of any record relating to J.H., and any record keeper who knowingly failed to comply with the order would be in contempt of court.

{¶8} The second decision of the magistrate related to K.M., and was issued on November 27, 2017. The magistrate decided that the evidence was insufficient to warrant a change in custody and that no modification was necessary. Therefore, Mother's motion for custody was denied. The magistrate further decided that Mother "should not have access to records related to the child under the same terms and conditions as provided for the residential parent." The magistrate granted visitation and ordered that Mother's visitation with K.M. would occur on

Saturdays, from 10:00 a.m. until 6:00 p.m.; the magistrate also made arrangements for transportation to and from the visits.

{¶9} Mother filed objections to the magistrate's decision regarding J.H. on November 30, 2017, and on December 11, 2017, relative to K.M. In entries dated December 1, 2017, and December 12, 2017, the juvenile court affirmed, approved, and adopted the magistrate's decisions relating to J.H. and K.M., respectively. The trial court failed, however, to rule on Mother's objections. Mother appealed, and we dismissed the appeal for lack of a final, appealable order. *In re J.H.*, 8th Dist. Cuyahoga No. 106658, 2018-Ohio-4026.

{¶10} After dismissal of her appeal, Mother requested, and was granted, a ruling from the trial court on her objections. In two separate entries dated October 10, 2018, the juvenile court overruled Mother's objections to the magistrate's decisions relating to J.H. and K.M., and affirmed, approved, and adopted the magistrate's decisions. Mother thereafter requested that we reinstate her appeal; we granted her request.

## II. Factual Background

{¶11} The first hearing in this case relative to Mother's motion now at issue was held in December 2016. At that hearing, per Mother's request, an in camera interview of K.M. was conducted. At that time, K.M. was 13-years old.

{¶12} The GAL for K.M. told the magistrate that K.M. was "anxious for visitation" with Mother, but that transportation was an issue. K.M. told the magistrate that he liked living with his uncle, but that he would also like to see his mom, with whom his contact at that time was limited to telephone conversations. When questioned by the court as to how he felt about supervised visits with Mother, K.M. replied that he did not feel that was necessary and he wanted to start with the weekends and then maybe try spending an entire summer with her. The

magistrate questioned K.M., "you don't need it to go real slow?," to which K.M. replied, "No. It's my mom. * * * I like to see her a lot."

{¶13} Further, K.M. had the opportunity to attend a birthday party for J.H., and per the GAL's reporting, K.M. was "very happy to meet his brother and even though he [J.H.] couldn't talk, he [K.M.] believes they have a bond." K.M. reported to the GAL that being able to interact with J.H. made him feel more secure and needed, and he felt that J.H. "needed him." The matter was scheduled for trial on Mother's motion in June 2017.

{¶14} On the June 2017 date set for trial, the following people were present: (1) the children's GAL, (2) J.H.'s alleged Father, (3) Mother, and (4) J.H.'s custodian. The magistrate noted that "we did have other attorneys involved, but apparently the Court's been informed that parents aren't entitled to either attorneys or a guardian ad litem. So they have been dismissed."

{¶15} The children's GAL informed the magistrate that she had concerns for both children and that she may need to make a referral. She recommended that both children stay in their then-current homes, and sought, and was granted, a no-contact order to prevent J.H.'s uncle (custodial aunt's husband) from having any contact with J.H. The hearing was continued until August 2017, so that the GAL's concerns could be addressed. On the August 2017 date, the GAL was sick, so the hearing was again continued for October 2017.

{¶16} The hearing took place in October 2017 as scheduled. Present were the children's GAL, J.H.'s alleged father, Mother, K.M.'s aunt (wife of custodial uncle), and J.H.'s custodial aunt. Prior to the hearing, the children's GAL filed a report, in which she recommended that there be no change in custody for either child. It was the GAL's opinion that the children were "thriving in their current environments and that a change in custody or residence would be against their best interest."

{¶17} But the GAL did recommend that K.M. be allowed regular visitation with Mother. And in regard to J.H., the GAL was of the opinion that Mother would not be capable of "meeting the needs of J.H. during even a brief visitation," due to J.H.'s special needs. The GAL therefore opined that it was in the "best interest of J.H. that any visitation be supervised," and that it occur at the custodial aunt's residence. The GAL further recommended that K.M. and J.H. be afforded an opportunity to bond with one another.

{¶18} Mother testified that she had concerns about both custodians' drinking habits. She admitted, however, that in regard to K.M.'s custodian, she had not had any of those concerns since March 2014, which was when the custodians were granted custody of the children.

{¶19} In regard to J.H.'s custodian, Mother testified that the custodian "socializes," and although she had never seen her doing so, she knew it was "an issue." When questioned about specifics, Mother replied, "I just know. I'd rather not go into that, but I just know."

{¶20} J.H.'s custodian testified that she repeatedly told Mother she was welcome at her home to visit J.H. But, according to the custodian, Mother never came or reached out in any way to make that happen, and the last time Mother saw J.H. was when he was approximately five months old; at the time of the hearing, he was five years old. The custodian testified that she did not believe Mother should get any type of visitation with J.H., not even supervised visitation. She denied drinking excessively, doing drugs, or having mental health issues. She testified that her only change in circumstance since she was granted custody of J.H. was one move to a new house, which she claimed was adequate and appropriate for J.H.

{¶21} The wife of K.M.'s custodian testified. According to her, Mother was not so good about calling and "checking in" on K.M., but admitted that she did reach out to him on social media. She further testified that she believed an order of visitation between Mother and K.M.

was reasonable. But she expressed concern about Mother not driving and either she or her husband always having to drop K.M. off at Mother's house. She stated that Mother was allowed to come to her house. She also denied that she or her husband drank excessively, did drugs, or had any mental health issues.

{¶22} The magistrate allowed Mother the opportunity to respond to the custodians' testimony. Mother addressed the transportation issue regarding K.M., stating that she believed she did not have any responsibility to provide transportation, even if she had visitation, because "they have full 100% custody. They are responsible for everything with him. If we go and get him, [they are] going to have supply a bus fee."

{¶23} Further facts will be discussed below as necessary.

### III. Assignments of Error

I. The decision of the trial court was against the manifest weight of the evidence.

II. The trial court abused its discretion in finding that limited visitation for the Mother was in the best interest[s] of the children.

III. The trial court abused its discretion in granting Mother such restrictive visitation that it amounts to a denial of visitation.

IV. The trial court erred to the prejudice of the appellant and violated her due process rights by removing her guardian ad litem during the pendency of these proceedings.

### IV. Law and Analysis

{¶24} Because the fourth assignment of error is potentially dispositive of this appeal, we consider it first. In this assignment, Mother contends that her due process rights were violated by the trial court's removal of her guardian ad litem. We disagree.

{¶25} R.C. 2151.281 and Juv.R. 4 govern the appointment of guardians in juvenile proceedings. Relative to appointing a GAL for a parent, the Revised Code and Juvenile Rules

provide for the appointment if the "parent of the child appears to be mentally incompetent or is under eighteen years of age." R.C. 2151.281(C) and Juv.R. 4(B)(3). Neither of these circumstances existed in this case.

{¶26} Moreover, even if a parent had been entitled to a GAL, the parent must affirmatively demonstrate that the failure to appoint one affected the outcome of the proceedings. *In re Amber G.*, 6th Dist. Lucas No. L-04-1091, 2004-Ohio-5664, ¶ 38. An appellate court will not presume prejudice. *Id.* Mother merely offers her own conclusory statement that she suffered prejudice; she does not affirmatively demonstrate that her lack of a GAL affected the outcome of the proceedings, and our review does not show that it did. As mentioned, relative to this appeal, Mother was without a GAL for the October 2017 hearing at which her motion to modify custody or visitation was considered. However, Mother competently testified and presented her concerns about the children's custodians. The custodians also testified, and Mother was allowed to respond to their testimony. On this record, we find that the outcome of the proceeding was not based solely on the fact that Mother did not have a GAL; therefore, there was no prejudice.

{¶27} The fourth assignment of error is overruled.

{¶28} The remaining assignments of error go the essence of the trial court's judgments on Mother's request for custody of her children or, alternatively, for additional visitation with them, and will be considered together.

{¶29} Custody and visitation are different concepts, and the trial court has a broader measure of discretion in setting visitation. *Roudebush v. Roudebush*, 20 Ohio App.3d 380, 380, 486 N.E.2d 849 (10th Dist.1984). As explained by the Ohio Supreme Court, "[m]odification of visitation rights is governed by R.C. 3109.05[1] and the specific rules for determining when a

court may modify a custody decree are not equally applicable to modification of visitation rights." *Appleby v. Appleby*, 24 Ohio St.3d 39, 40, 492 N.E.2d 831 (1986).

{¶30} Specifically, a motion for a modification of visitation, which is governed by R.C. 3109.051, only involves a best interests of the child analysis, while a motion for change in custody, which is governed by R.C. 3109.04, requires that a change in circumstance be demonstrated, as well as a best interests of the child analysis. *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999); *Flynn v. Flynn*, 10th Dist. Franklin App. No. 02AP-801, 2003-Ohio-990.

{¶31} The standard of review for a trial court's decisions on motions for modification of visitation rights and modification of custody is an abuse-of-discretion standard. *Archer v. Archer*, 4th Dist. Pickaway No. 96CA37, 1997 Ohio App. LEXIS 4345, 19 (Sept. 24, 1997) ("[A] trial court's decision on a motion for modification of visitation rights may not be reversed absent an abuse of discretion."); *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997) (In considering changes in custody, "a trial judge must have wide latitude in considering all the evidence before him or her — including many of the factors in this case — and such a decision must not be reversed absent an abuse of discretion.").

{¶32} An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard of review, we must not substitute our judgment for that of the trial court. *In re Jane Doe I*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991). We must presume the findings of the trial court are correct because the trial judge is best able to observe the witnesses and use those observations

in weighing the credibility of the testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶33} In regard to the abuse-of-discretion standard for a change of custody, *Davis* explained it as follows:

> "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court."
>
> The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. * * *
>
> "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *
>
> "* * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."
>
> This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well.

(Citations omitted.) *Id.* at 418-419.

{¶34} As mentioned, the trial court denied Mother's request for a change of custody as to both children. Relative to J.H., her younger child, the juvenile court also denied Mother's request for visitation with him. However, relative to the older child, K.M., the trial court allowed Mother visitation on Saturdays, from 10:00 a.m. until 6:00 p.m.

**Custody**

{¶35} The trial court determined that the evidence was insufficient to warrant a change of custody as to either child — that is, there was no change of circumstance in the children's present custodial arrangement that would warrant a change, and it was not in their best interests to change custody. We uphold the trial court's decision.

{¶36} In regard to J.H., the record demonstrates that Mother and K.M. were homeless and living in a vehicle immediately preceding J.H.'s birth in August 2012. J.H. experienced complications at birth and required an extended hospital stay. Because of the extended stay, Mother and K.M. were able to obtain housing at the Ronald McDonald House, a housing facility for families of patients in the hospital where J.H. was — the "house" is within walking distance of the hospital. However, Mother infrequently visited J.H. during his hospitalization. It was during this time that the Cuyahoga County Department of Children and Family Services ("CCDCFS") initiated proceedings regarding the children. J.H. was discharged from the hospital in January 2013, and, as of the time of the October 2017 hearing relative to this appeal, Mother had not visited with him since his discharge.

{¶37} The record demonstrates that J.H. has significant medical and developmental issues. The record further demonstrates that his custodian is very involved with his medical and developmental care, and that J.H. is "extremely" bonded to her. Although he is considered "medically fragile," as of the time of the hearing, he was in preschool and was making strides.

{¶38} The children's GAL visited J.H. in several settings — at home, at school, and in the hospital — and found that the interactions among him, his custodians, and other people in the custodian's home were "appropriate and loving." According to the GAL, J.H. was "thriving" in his present environment.

{¶39} Mother did not present evidence to the contrary. Essentially, she and J.H. were "strangers" at the time of the hearing — she had minimal involvement with him while he was hospitalized and no interaction with him after he was discharged. She made accusations about J.H.'s custodian, but when asked to elaborate on them at the hearing she merely replied that she "just knew there were issues, but she would rather not get into them."

{¶40} On this record, there was no change of circumstance in J.H's custodial arrangement that would warrant a change, and it was not in his best interest to change custody.

{¶41} Relative to K.M., the record demonstrates that K.M. and Mother did have a relationship. However, when K.M. was living with Mother, he was not regularly attending school, which caused him, at the time of the hearing, to be two years behind where he should have been in school. Since being in uncle's custody, K.M. was regularly attending school, was doing well, and hoped to soon be placed in the appropriate grade for his age.

{¶42} Mother stated that she had concerns about alcohol and drug use, and fighting in uncle's home. K.M. reported that there was some fighting in the home, but that he knew that Mother did not have much money and wished to continue visitation with her, as opposed to living with her. The GAL made multiple visits to uncle's home — both announced and unannounced — and found the home to be "appropriate and safe."

{¶43} Both the GAL and uncle had concerns about Mother having custody of K.M. One of their main concerns was that he may lose the gains he had made educationally. Of further concern was that Mother had no income and did not drive.

{¶44} The record did not support Mother's allegations about alcohol and drug use in the home. And although the record supports Mother's allegation that there was "fighting" in the home, the record also demonstrates that K.M. was doing well in the home and wanted to stay

there.   On this record, there was no change of circumstance in K.M's custodial arrangement that would warrant a change, and it was not in his best interests to change custody.

**Visitation**

{¶45} In regard to J.H., as mentioned, he has significant medical and developmental issues — his care needs are extensive, and include the ability to monitor and manage his feeding G-tube and pump, and get him to his many medical and therapeutic appointments.

{¶46} After J.H. was born, he was hospitalized for approximately the first five months of his life, and during that time, Mother had limited contact with him; therefore, Mother did not, among other things, learn how to tend to his medical needs.   After his release from the hospital, Mother had no contact whatsoever with him.   Thus, Mother and J.H. are virtual strangers to each other.

{¶47} One of the difficulties that J.H. had that was noted by the GAL was a change in routine.   For example, the GAL noted that on one occasion at school, the normal restroom that J.H. used was out of order and he had to go to another restroom, and that caused him "extreme confusion and anger."   J.H. also had "extreme difficulty" when his aunt moved to a new house.

{¶48} As mentioned, Mother never saw J.H. after he was released from the hospital when he was an infant.   The record indicates, however, that aunt was willing to allow Mother to visit with J.H. in aunt's home, but Mother never contacted her to make the arrangements.

{¶49}   The aunt told the GAL that she was still open to allowing Mother to visit with J.H. in aunt's home (contrary to her testimony at the hearing), and the GAL recommended supervised visitation for Mother with J.H.; the trial court, however, denied Mother any visitation with J.H.   It is evident from the record that Mother had animosity toward aunt, and it was Mother's belief that she should be able to visit with J.H. outside of the presence of aunt.   But

the record also demonstrates that a visitation outside aunt's presence would not be in J.H.'s best interest. However, we find that a complete denial to Mother of any ability to visit with J.H. was an abuse of discretion, especially in light of the GAL's recommendation for supervised visitation. We therefore reverse the trial court's decision denying Mother any visitation with J.H., and remand the matter to the trial court for further proceedings so that a supervised visitation schedule can be established.

{¶50} In regard to her visitation with K.M., Mother contends that the trial court's order is so restrictive that it basically strips her of any visitation with him and was an abuse of discretion.

{¶51} The court granted Mother visitation with K.M. on Saturdays from 10:00 a.m. until 6:00 p.m., and made arrangements for transportation to and from the visits. On this record, we find no abuse of discretion.

{¶52} The record demonstrates that Mother and K.M. were bonded and it was K.M.'s desire to see Mother. Nonetheless, there were concerns, one in particular being that Mother had previously neglected his educational needs. Therefore, visitation during the week would not have seemed to be a wise course for K.M.

{¶53} Further, there were also concerns raised by uncle and confirmed by K.M., that Mother allowed him to leave her house, unsupervised, for extended periods of time. Mother also allowed his friends' parents to pick him up for "play dates" without uncle's prior knowledge and consent.

{¶54} On this record, the trial court did not abuse its discretion in limiting Mother's visitation with K.M. to Saturdays. However, in line with our decision finding that the trial court abused its discretion by failing to allow Mother supervised visitation with J.H., we also find that the trial court abused its discretion by not allowing the two brothers to bond with each other.

Therefore, on remand, the trial court is also instructed to fashion a schedule that would allow the two brothers to have time together. We are cognizant that it would have to be supervised because of J.H.'s special needs, but we believe it can be arranged, especially in light of the fact that K.M. expressed his desire to get to know J.H., whom he has been unable to bond with through no fault of his own.

{¶55} The trial court's judgments are affirmed in part, and reversed in part and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellees share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

MARY EILEEN KILBANE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR